IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KATHLEEN COULOMBE,                                    CV 06-1416-MA

       Plaintiff,                                    OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

       Defendant.


TIM WILBORN
Wilborn Law Office, P.C.
19093 S. Beavercreek Road, PMB # 314
Oregon City, OR 97045
(503) 632-1120

       Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1158


1 - OPINION AND ORDER

DAVID J. BURDETT
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2522

       Attorneys for Defendant

MARSH, Judge.

     Plaintiff Kathleen Coulombe filed this action for judicial review of the final decision of the Commissioner denying her May 13, 2003, application for disability insurance benefits (benefits) under Title II of the Social Security Act, 42 U.S.C. §§ 401-33.

     On the date of the Commissioner's final decision, plaintiff was 44 years old.  She has an Associate of Applied Science degree and was previously employed as a dental hygienist from 1994 until 2001.

     Plaintiff claims she has been disabled since January 31, 2001, because of chronic neck, back, and shoulder pain, and degenerative disc disease.

     The Administrative Law Judge (ALJ) held a hearing on November 17, 2005.  On April 25, 2006, the ALJ found plaintiff was not disabled and, therefore, was not entitled to an award of benefits.  The Commissioner affirmed the ALJ's decision on appeal.  Plaintiff now seeks an order from this court reversing the Commissioner's decision and remanding the case for an award of benefits.  The Commissioner contends her decision is based on

2 - OPINION AND ORDER

substantial evidence, is free from legal error and, therefore, the court should affirm her decision denying benefits.

This court has jurisdiction under 42 U.S.C. § 405(g).  For the following reasons, the court **REVERSES** the final decision of the Commissioner and **REMANDS** this action for further proceedings.

<u>**THE ALJ'S FINDINGS**</u>

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled.  <u>Bowen v. Yuckert</u>, 482 U.S.137, 140 (1987).  <u>See also</u> 20 C.F.R. § 404.1520. Plaintiff bears the burden of proof at Steps One through Four. <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

At Step One, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability on January 31, 2001.

At Step Two, the ALJ found plaintiff has impairments of degenerative disc disease of the thoracic spine and status post cervical fusion that are severe under 20 C.F.R. §§404.1520©) (an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

At Step Three, the ALJ found plaintiff's impairments did not meet or equal "the requisite criteria for any listings" as set forth in 20 C.F.R. §§ 404.1520(a)(4)(iii) and (d).

3 - OPINION AND ORDER

The ALJ found plaintiff had the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently, to sit, stand, and walk up to six hours in a normal eight-hour work day and do unlimited pushing and pulling.  She is able to stoop, kneel, crouch, crawl, and reach overhead occasionally.

At Step Four, the ALJ found plaintiff was unable to perform her past relevant light skilled work as a dental hygienist. 20 C.F.R. §§ 404.1520(a)(4)(iv).

At Step Five, the ALJ found plaintiff is able to perform other work that exists in significant numbers in the regional and national economy, including the jobs of cashier II, telephone quotation clerk, and routing clerk.

Consistent with the above findings, the ALJ found plaintiff was not under a disability and denied her claim for benefits.

On August 4, 2006, the Appeals Council's affirmation of the ALJ's decision became the final decision of the Commissioner for purposes of judicial review.

## LEGAL STANDARDS ON JUDICIAL REVIEW

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  To meet this burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically

4 - OPINION AND ORDER

determinable physical or mental impairment which . . . has lasted
or can be expected to last for a continuous period of not less
than 12 months."  42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  "Substantial evidence means more than a mere
scintilla but less than a preponderance; it is such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.
1995).

The court must weigh all of the evidence whether it supports
or detracts from the Commissioner's decision.  Martinez v.
Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's
decision must be upheld, however, even if the "evidence is
susceptible to more than one rational interpretation."  Andrews,
53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record.
DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).  The duty
to further develop the record, however is triggered only when
there is ambiguous evidence or when the record is inadequate to
allow for proper evaluation of the evidence.  Mayes v. Massanari,
276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or

for immediate payment of benefits is within the discretion of the court.  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir.), <u>cert</u>. <u>denied</u>, 121 S. Ct. 628 (2000).  "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."  <u>Lewin v. Schweiker</u>, 654 F.2d 631, 635 (9th Cir. 1981).

**<u>RELEVANT RECORD</u>**

1.  **<u>Plaintiff's Background</u>.**

The following information is drawn from statements made by plaintiff on her disability application, during medical examinations, and in her testimony at the hearing.

a.  **Education and Employment History**.

Plaintiff has 16 years of education, and obtained an Associates of Applied Science degree in 1994.  Since then, she worked as a registered dental hygienist either full- or part-time until the onset of her alleged disability on January 29, 2001. Plaintiff's earnings history, however, reflects she earned income of $16,600 after that date.  Plaintiff conceded that, in fact, the money was paid to her by her husband from his corporate business in order to eliminate his corporate income tax liability.  Although she was director of the company, Plaintiff performed no services in return for the payment.  The payment potentially increased her income for purposes of calculating social security disability and retirement benefits.

6 – OPINION AND ORDER

**b.  Medical History.**

Plaintiff began suffering chronic neck, back, and shoulder pain in 1997 as a resulting of a disc profusion at C5-6.  She underwent a cervical discectomy and fusion in January 2001.

Plaintiff testified her mobility in her neck and upper back have not been "affected a lot" but sustained activity affects her "tremendously."  In addition, any kind of static, still movement, such as bending and leaning, is an "absolute killer[]."  When she reaches out or move her arms in general, her hands "tingle" and she has pain in "her neck, back, arms, and shoulders."  Most of plaintiff's pain, however, is in the area of her thoracic spine.  On a scale of ten, plaintiff's pain level is from three to five on a good day and eight on a bad day.

Plaintiff takes morphine on a suspended release basis and Vicodin as needed.  Side effects of the medication include drowsiness, extreme constipation, and urinary retention.  She takes approximately 180 narcotic pain medications a month, which concerns her.  Neither of her prescribing doctors, however, have recommended detoxifying her.  One doctor recommended an implanted morphine pump, which plaintiff rejected.  Plaintiff inquired about the possible use of medical marijuana but her doctor advised her it would not be helpful.  Plaintiff receives four or five epidural steroid injections in a row and then takes a break of two or three months before resuming them.

7 - OPINION AND ORDER

### c. Physical Limitations.

Plaintiff is able to walk a couple of miles except on those days when she is "spasming." Recently she has had difficulty sleeping at night. She takes a lot of naps and sometimes will sleep for 20 hours at a stretch. Plaintiff tries to get up early to help her husband get her six-year old and ten-year old boys to school. She works "a little bit" on hobbies such as flower decorating.

Plaintiff states her back pain prevents her from working an eight-hour day, five days a week.

### d. Mental Limitations.

Plaintiff states she is "really depressed" because she is unable to work. She does not socialize much with family or friends. She does not get along with her husband.

Plaintiff takes Effexor once a day to treat her depression. She has received counseling from a licensed clinical social worker "on and off" since 1996 or 1997.

### 2. <u>Husband's Lay Witness Testimony</u>.

Dwayne Coulombe has run a pest control business for 25 years. His wife does not work in the business. He believes plaintiff "functions a lot less" and has been a "totally different person" since the onset of her back pain. She is not happy because she cannot do some of the things she used to do,

especially her former job, which she enjoyed.  Plaintiff,
however, can do "pretty much the same things" as before except
"bend over a lot."  "She probably does them a little longer than
she should."  He has noticed her pain is triggered when she sits
in one position for a long period of time.  "She can probably do
things for a half an hour or 45 minutes before she has to get up
and stretch and move around."

Mr. Coulombe is concerned about the amount of medication his
wife takes and has expressed that concern to her.  His
relationship with her has been affected by her depression,
moodiness, and anger over her inability to return to work as a
dental hygienist, a job she loved.  He does not believe she can
return to work.  He and his wife do not get along as well now
because of issues "related to our personal life."

**3.  <u>The Relevant Medical Record</u>.**

The relevant medical history includes records from medical
treatment providers relating to plaintiff's physical and mental
conditions, and DDS medical and psychiatric examiners and
consultants acting on behalf of the Commissioner.

**a.  Treatment for Physical and Mental Impairments.**

<u>Arlan Zastrow, M.D. - Family Practice</u>.

In 2000, Dr. Zastrow noted plaintiff had emotional problems
because of marital issues.  She also had ankle edema, fatigue,

weight gain, and constipation.  In September, plaintiff had increasing discomfort in the shoulder and neck muscles.

<u>Catherine Gallo, M.D., Neurosurgeon</u>.

In early February 2001, Dr. Gallo recommended and performed an anterior cervical discectomy and fusion to relieve plaintiff's complaints of "neck and bilateral arm radicular pain secondary to central disc profusion at C-5-6."  As of late February 2001, plaintiff had "minimal neck pain and none of her previous radicular symptoms."  She was not taking narcotics and the "film looks great with excellent progression of interbody fusion at C5/6."

<u>Sam J. Russo, D.O. - Urgent Care Physician</u>.

Dr. Russo, <u>inter alia</u>, provided follow up care for plaintiff in 2001 after her operation.  In March, he felt "she is doing very well."  She had some paresthesia in the hands.  He discussed pain control options and Plaintiff's potential return to work. She was considering changing her job but staying in the dental field.  Dr. Russo thought her return to work would "depend on the nature of her symptoms and severity of pain over the next six to seven months."  In July, Dr. Russo noted plaintiff had been released to work six hours per week, but had only worked three hours because of pain."  He thought plaintiff's return to work should be limited to "2-4 hours per week," or "an hour or two per day, if possible."

10- OPINION AND ORDER

In August, Dr. Russo assessed "chronic thoracic back pain with exacerbation last week."  In October, his assessment was "depression" and "chronic neck pain."  Plaintiff had been working two hours a week and had "significant problems with her neck with pain and radiation into the shoulders and arm."  Her medications included Neurontin, Ultracet, Paxil, and Wellbutrin.

Sarah L. Agsten, D.O., Family Practice.

Dr. Agsten began treating plaintiff in February 2002.  At that time, her assessment was chronic neck and shoulder pain, major depression, insomnia, and hypothyroidism (by history).  During her first visit, plaintiff expressed concern about the amount of medication she was taking, which included Paxil, Neurontin, Robaxin, and Elavil.  She also received periodic epidural steroid injections.  Plaintiff inquired about taking medical marijuana but was discouraged by Dr. Agsten because of its depressive effects.

In August 2003, Dr. Agsten completed a check-off form in which she opined plaintiff was "completely unable to work" because of "degenerative cervical spine disc disease" and her prognosis for date of return to work was "more than 12 months."

In early 2005, Dr. Agsten treated plaintiff for major depression and prescribed Cymbalta to replace the Effexor medication plaintiff had been taking.  A month later, plaintiff

requested to change back to Effexor because she was feeling worse, with suicide ideations but no clear plan.

Donna Morgan, M.D. - Pain Management.
Allen Goodwin, M.D. - Physical Medicine and Rehabilitation.

These physicians performed epidural steroid injections to relieve plaintiff's thoracic pain from 2002 through 2005.

**b.   Examining Psychologist.**

Judith Eckstein, Ph.D. - Psychologist.

In December 2005, Dr. Eckstein performed a psychodiagnostic evaluation of plaintiff on behalf of DDS to address plaintiff's depression.  She concluded the "primary focus of [plaintiff's] depression appears to be related to her medical condition."  She diagnosed an "Adjustment Disorder With Depressed Mood, Severe, Chronic," and "Chronic neck and shoulder pain."  Dr. Eckstein noted plaintiff had some impairment in concentration, as evidenced by her difficulty in counting backwards "even though she was able to perform this task successfully."  Dr. Eckstein assigned a GAF score of 55 - moderate symptoms, or moderate difficulty in social, occupational, or school functioning.

**c.   Consulting Physicians.**

Martin Lahr, M.D. - Pediatrics.
Martin Kehrli, M.D.

These physicians reviewed plaintiff's medical records for the purpose of offering their opinions as to plaintiff's residual functional capacity.

12 - OPINION AND ORDER

Dr. Lahr concluded plaintiff is able to lift 20 lbs. occasionally and 10 lbs frequently, stand and sit six hours in an eight-hour workday day, and lift and carry without limitation, except for the weight limits described above. Plaintiff is able to climb and balance frequently, and stoop, kneel, crouch, and crawl, occasionally. She is able to reach in all directions only on a limited basis, but has no other manipulative limitations.

Dr. Kehrli concluded that although plaintiff has medically determinable impairments, her claim of disability is only partially credible in light of her lack of problems in performing daily activities, such as personal care, meal preparation, household chores, shopping, and driving. Dr. Kehrli gave no weight to Dr. Russo's opinions regarding plaintiff's ability to return to work, because the opinions "are not durational." He concluded plaintiff is able to perform light work.

Dorothy Anderson, Ph.D. - Psychologist.
Paul Rethinger, Ph.D. - Psychologist.

Dr. Anderson and Dr. Rethinger each reviewed plaintiff's medical records and concluded plaintiff suffers from a non-severe adjustment disorder with depressed mood. Dr. Rethinger concluded plaintiff has no restrictions as to daily living activities, no episodes of decompensation, and only mild difficulties in maintaining social functioning and maintaining concentration, persistence, or pace, in a work environment. Dr.

Rethinger disagreed with Dr. Eckstein's evaluation that plaintiff had moderate difficulties with concentration.

<u>**DISCUSSION**</u>

Plaintiff contends the ALJ improperly (1) rejected plaintiff's testimony regarding her level of pain and ability to work on a sustained basis, (2) rejected lay witness testimony of plaintiff's husband, and (3) rejected medical and psychological evidence regarding plaintiff's physical and mental capacities.

Based on these alleged errors, plaintiff seeks an order remanding this case to the ALJ for an award of benefits, or in the alternative, for further proceedings.

**1.    <u>Rejection of Plaintiff's Testimony</u>.**

The ALJ rejected plaintiff's testimony regarding the severity of her symptoms based on his finding she was not entirely credible.

**Standards for Determining Credibility.**

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" (the <u>Cotton</u> test). <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)). <u>See</u> <u>also</u> <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1407-08 (9th Cir. 1986). A claimant need not produce objective medical evidence of the symptoms or their

14– OPINION AND ORDER

severity.  Smolen v. Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If a claimant produces objective evidence that underlying impairments could cause the pain she complains of and there is no affirmative evidence to suggest the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of her symptoms.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). See also Smolen, 80 F.3d at 1283.  To determine whether plaintiff's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. at 1284 (citations omitted).

**Analysis.**

In his finding regarding plaintiff's residual functional capacity, the ALJ found that although the plaintiff's impairments could produce the symptoms she claims, "the plaintiff's statements concerning the intensity, duration, and limiting effects of these symptoms are not entirely credible." (Emphasis in original).

The ALJ found the severity of plaintiff's symptoms were not "fully supported by the objective medical findings, medical opinion evidence, and her activities."  The ALJ specifically noted the following:  One month after the cervical fusion, Dr. Gallo reported plaintiff had "minimal neck pain and none of her previous radicular symptoms" and "was not taking narcotics." Dr. Russo found plaintiff was doing "very well" not long after the surgery; although plaintiff had difficulty after returning to work as a dental hygienist for only three hours, there was a "difference between not being able to work as a dental hygienist and not being able to work at all" and "there was no indication plaintiff could not work at all."

The ALJ also noted that, although plaintiff's original pain symptoms were in the neck and shoulders, where the protruding disc was located and the fusion operation performed, most of plaintiff's pain complaints, and the epidural steroid injections she received to alleviate the pain, were located in the thoracic area.  The ALJ found "no clinical explanation for the cause of this alleged pain, nor how it migrated from the cervical spine to the thoracic spine."  In summarizing the medical evidence, the ALJ stated "the record shows [plaintiff] healed well objectively from this fusion.  She got relief from narcotics and injections, although she later denied any relief.  That negatively affects her credibility."

I note, however, there is ample objective evidence to support plaintiff's pain complaints, both in her neck and thoracic spine.  The fact that plaintiff healed well from her neck surgery is not dispositive as to whether she continued to suffer pain thereafter.  Dr. Russo, who made that statement, also concluded plaintiff "may not ever be able to go back to her regular type job."  At a minimum, every medical provider and consultant who examined or reviewed plaintiff's medical records agrees that plaintiff suffers pain sufficient to preclude her from performing her past work as a dental hygienist.

Moreover, it is apparent that the overarching cause of the ALJ's concern regarding plaintiff's credibility is his perception that plaintiff engaged in fraudulent conduct, in collusion with her husband, in diverting $16,000 of corporate income from his company to her for purposes of evading income tax liabilities, with the additional financial reward of increasing the amount of her potential future social security benefits.  The court notes, however, that in her testimony, plaintiff freely and candidly acknowledged the transfer, but also stated it was done at her husband's request, following advice by an accountant that such a transfer was proper.

On this record, I find the reasons given by the ALJ for doubting plaintiff's credibility as to the severity of her symptoms are not clear and convincing.  In particular, his

conclusion that plaintiff engaged in tax fraud based on the
information he was provided was at best premature.

**2.    <u>Rejection of Lay Witness Testimony</u>.**

Plaintiff contends the ALJ failed to give appropriate credit
to the testimony of her husband regarding her ability to work,
her limitations, and her mental state.

The ALJ may reject the testimony of lay witnesses only by
giving reasons germane to each witness whose testimony is
rejected. *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).

The ALJ noted plaintiff's husband testified that plaintiff
"functioned less," that she "wanted more than anything to return
to her dental hygienist job," and that the marital relationship
had been adversely affected by her depression.  The ALJ found
"some of the [husband's] testimony seemed exaggerated and was not
consistent with [plaintiff's] activities as documented throughout
the record."  Accordingly, the ALJ gave the husband's testimony
only the weight that was consistent with her residual functional
capacity as it was developed through other evidence in the
record.  The ALJ also discounted the husband's testimony
regarding depression, noting that the husband also testified the
marital difficulties preceded the onset of plaintiff's alleged
disability and were caused by issues related to their personal
life.

Although the record as a whole reflects the ALJ did not

reject the husband's testimony outright, he discounted the testimony to the extent it would support plaintiff's claim that she cannot work in any job, not just in her past job as a dental hygienist.  The ALJ, however, did not identify any specific inconsistencies, and appears to have been predisposed to discredit the testimony because it did not agree with the ALJ's view of the medical evidence.

On this record, I find the ALJ did not give germane reasons for discounting the husband's testimony.

**3.    Rejection of Medical Opinion Evidence**.

Plaintiff contends the ALJ failed to give sufficient reasons for rejecting (1) the opinion of treating physician, Dr. Agsten, that plaintiff was completely unable to work for at least 12 months because of degenerative cervical spine disc disease, and (2) the opinion of examining physician, Dr. Eckstein, that plaintiff has a severe chronic depressive mood disorder and would have difficulty performing tasks in a timely manner when she was stressed.

In Reddick v. Chater, 157 F.3d 715, 7125 (9th Cir. 1998), the Ninth Circuit laid out the weight to be given to the opinions of treating doctors:

> The opinions of treating doctors should be
> given more weight than the opinions of
> doctors who do not treat the claimant. Where
> the treating doctor's opinion is not
> contradicted by another doctor, it may be
> rejected only for clear and convincing

19 - OPINION AND ORDER

reasons supported by substantial evidence in
the record.  Even if the treating doctor's
opinion is contradicted by another doctor,
the ALJ may not reject this opinion without
providing specific and legitimate reasons
supported by substantial evidence in the
record.  This can be done by setting out a
detailed and thorough summary of the facts
and conflicting clinical evidence, stating
his interpretation thereof, and making
findings.  The ALJ must do more than offer
his conclusions.  He must set forth his own
interpretations and explain why they, rather
than the doctors', are correct.

(Internal Citations Omitted).  In turn, "the opinions of

examining physicians are afforded more weight than those of non-

examining physicians."  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir.

2007).

**Dr. Agsten's Opinion.**

Dr. Agsten opined in August 2003 that plaintiff was unable

to work because of chronic back pain issues and major depression.

The medical records reflect Dr. Agsten treated plaintiff until

March 2005.  Her diagnoses remained consistent throughout the

course of the treatment.

The ALJ gave Dr. Agsten's opinion as to depression "little

weight" because Dr. Agsten is not a mental health provider.  He

also gave "little weight" to Dr. Agsten's disability opinion

because it was given on a form without explanation as to why

plaintiff could not work.  The ALJ also found Dr. Agsten gave no

objective basis for her opinion but instead relied on plaintiff's

subjective description of functional limits, and appeared to

disregard the fact that plaintiff "seems unwilling to admit that she has relief on her extensive narcotics." Finally, the ALJ offers the advice that plaintiff's "doctors should review these extensive prescriptions if they do not give [plaintiff] relief]. The court finds the ALJ's reasons for rejecting Dr. Agsten's opinion are unpersuasive.

First, during the hearing and in his written opinion, the ALJ expressed considerable concern, at one point stating he was "stunned," by the amount of medication being taken by plaintiff. There is, however, no evidence in the record from any health care provider or consulting physician that plaintiff engaged in any drug-seeking behavior, nor is there any evidence that any physician, including Dr. Agsten, over-prescribed any medication.

Second, the answers Dr. Agsten gave on a preprinted form regarding plaintiff's ability to work were not inconsistent with her chart notes for each of plaintiff's visits. I note the ALJ had no hesitation in accepting the non-disability opinions of consulting DDS physicians/psychologists who offered their opinions on printed forms based on the same medical record, but without the benefit of having examined or treated plaintiff.

Third, Dr. Agsten's opinion that plaintiff suffered from major depression was consistent with the opinion of Dr. Eckstein, the psychologist who examined plaintiff as to her mental status on behalf of the Commissioner.

On this record, the court finds the ALJ failed to give clear and convincing evidence supported by substantial evidence in the record for rejecting Dr. Agsten's disability opinion.

**Dr. Eckstein's Opinion.**

As noted, Dr. Eckstein examined plaintiff on behalf of the Commissioner to determine plaintiff's mental state.  She concluded plaintiff had a severe, chronic adjustment disorder with depressed mood, that was "primarily related to her medical condition."  The ALJ rejected Dr. Eckstein's diagnosis, primarily because it was based on the plaintiff's self-report, which the ALJ did not credit as entirely accurate.  In addition, the Commissioner points out Dr. Eckstein's opinion was contradicted by Dr. Rethinger, the consulting psychologist who reviewed plaintiff's medical records but did not examine her.

The court concludes the ALJ failed to give a germane or good reason for giving greater weight to Dr. Rethinger's opinion over Dr. Eckstein's, particularly in light of the court's earlier finding that the ALJ improperly rejected plaintiff's testimony regarding her limitations.

In summary, the Court concludes the Commissioner's final decision denying plaintiff's claim for disability benefits is not supported by substantial evidence.  There is substantial evidence in the record to support a finding that plaintiff cannot return to her past relevant work.  The court, however, concludes, even

22- OPINION AND ORDER

if plaintiff's testimony is credited as true, the record is not sufficiently developed for a determination to be made as to whether plaintiff is able to engage in other substantial gainful activity.  The focus of the medical providers was primarily on Plaintiff's inability to return to her former work as a dental hygienist in light of her physical impairments.  Moreover, there was no evidence regarding plaintiff's ability to work assuming she suffered from major depression, as diagnosed by Dr. Eckstein.

On this record, I exercise my discretion to remand this matter for further proceedings to determine plaintiff's ability to engage in substantial gainful activity other than her past relevant work in light of her physical impairments and major depression.

<u>**CONCLUSION**</u>

For all the reasons stated above, this matter is REMANDED to the Commissioner for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this  3  day of December, 2007.


  /s/  Malcolm F. Marsh
MALCOLM F. MARSH
United States District Judge

23 - OPINION AND ORDER

24 - OPINION AND ORDER